Spann *vs.* The State of Georgia.

ENOCH F. SPANN, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

| 47 | 553 |
| 102 | 654 |

| 47 | 553 |
| e129 | 721 |

(MONTGOMERY, Judge, was *providentially prevented from presiding* in this case.)

1. The Act of the General Assembly authorizing the Judges of the Superior Courts to hold a special term of the Court for the trial of criminal offenses is constitutional. (R.)
2. The insanity which the law recognizes as an excuse for crime must be such as dethrones reason and incapacitates an individual from distinguishing between right and wrong. (R.)

Criminal law. Constitutional law. Insanity. Before Judge CLARK. Webster Superior Court. May Special Term, 1872.

For the facts of this case, see the decision.

HAWKINS & GUERRY; W. A. HAWKINS; PHIL. COOK, for plaintiff in error.

C. F. CRISP, Solicitor General; C. T. GOODE, for the State.

WARNER, Chief Justice.

1. The defendant was indicted and tried for the crime of murder, at a special term of the Superior Court held in the county of Webster. On the trial, the jury found the defendant guilty. A motion was made for a new trial, on the several grounds specified and set forth in the record, which was overruled by the Court, and the defendant excepted. The Act of the General Assembly authorizing the Judges of the Superior Courts to hold a special term of the Court for the trial of criminal offenses, is constitutional: *Grinad and Benton, vs. The State,* 34 *Georgia Reports,* 271. In the view which we have taken of this case, the several exceptions taken to the proceedings on the trial were not material, and must be controlled by the legal effect of the newly discovered evidence in relation to the insanity of the defendant, which is the main question in the case. The evidence in the record discloses the undoubted fact that the defendant and Eberhart, a girl living

in the house with him, killed his wife by strangling, and breaking her neck with a rope when she was lying on her bed asleep; that after they had killed her they heated water and attempted to obliterate the marks of the rope around the neck of the dead woman, but the more they washed it the plainer the marks appeared; that then the parties fled to the State of Alabama, were pursued, and defendant was found in Coffee county, chopping cotton in the cotton patch of one Harris. When defendant was arrested by those who pursued him he asked them what authority they had to arrest him out of the State.

The motion for a new trial in this case is based mainly on newly discovered evidence, since the trial, of the defendant's insanity, and the affidavits of several doctors have been procured who have examined him since the trial, and some of whom knew him before the trial, and they give it as their opinion that the defendant is afflicted with *moral insanity*. There are also affidavits of other persons, not doctors, who have known the defendant, who state that he is a dull, weak-minded man.

If we are to understand by moral insanity that the defendant was so depraved that he was regardless both of the laws of God and man, as the enormity of his crime would induce most people to believe, then the import of the words *moral insanity* requires no further explanation, but if moral insanity is to be understood as that species of insanity which, in the sense of the law, will excuse the defendant from the commission of the crime with which he is charged, then it is a great mistake on the part of those who insist upon it.

2. The insanity which the law recognizes as an excuse for crime, must be such as dethrones reason and incapacitates an individual from distinguishing between right and wrong. There is not one of the affidavits in this case containing the newly discovered evidence, including all the doctors, who venture to state that the defendant did not have sufficient reason and capacity to distinguish right from wrong at the time the crime with which he is charged was committed, and that is

the fatal defect of all the evidence contained in the record, in support of the motion for a new trial. The defendant had sufficient reason and capacity to attempt to obliterate the marks of violence from the neck of his dead wife, and to flee from the State with his paramour after he had committed the crime; and he had sufficient reason and capacity to demand of his pursuers by what authority they arrested him out of the State where the crime was committed.

The records of this Court, we are quite sure, do not furnish a more aggravated case of cool, deliberate murder than the one now before us, and we shall not interfere with the verdict of the jury which finds the defendant guilty of that crime.

Let the judgment of the Court below be affirmed.