## HERNDON *v.* THE STATE.

1. It is discretionary with the court to suspend the trial of a criminal case to allow an expert witness, introduced by the accused and then on the stand, to examine an indentation in the skull of the accused, in order to enable him to testify as to its effect upon the accused as to sanity or insanity.

2. It is not error to allow non-expert witnesses on the subject of the sanity of the accused to testify that they know the accused and have seen nothing in his appearance or conduct to indicate insanity.

3. Improper remarks by the solicitor-general, unrebuked by the judge, will not work a reversal of the judgment in this case, as no objection was made and no ruling of the court invoked.

4. The evidence amply supported the verdict.

Argued June 18, — Decided July 12, 1900.

Indictment for murder. Before Judge Reese. Wilkes superior court. May term, 1900.

*W. D. Tutt & Son* and *R. C. Norman,* for plaintiff in error.

*J. M. Terrell, attorney-general,* and *R. H. Lewis, solicitor-general,* by *Harrison & Bryan,* contra.

SIMMONS, C. J. Upon an indictment for murder, Herndon was tried and convicted. His motion for a new trial was overruled, and he excepted.

1. One of the grounds relied upon by counsel for the plaintiff in error was, that the court refused to allow a medical expert, who had been introduced by the accused and who was upon the stand testifying as a witness, to examine an indentation or depression in the skull of the accused, and then testify as to the effect it would produce upon his mind; the accused

having, in his statement to the jury, stated that the depression had been made in his early youth by a falling stone, that he had subsequently had a severe case of typhoid fever, and that since then he had been at times ignorant or unconscious of what he said and did. We think this was a matter entirely within the discretion of the trial court. The court may or may not suspend a trial for this purpose according to the circumstances of each particular case. Where a matter of practice is within the discretion of the trial court, this court will not interfere unless such discretion is manifestly abused. We can not establish any fixed rules to govern courts in this respect. In some cases an examination of an injury might be made in a few minutes; in others, hours might be consumed before the expert could come to any definite conclusion as to the nature and character of the injuries. Then, too, this appears to have been the second trial of the present case, and the accused and his counsel had abundant opportunity to have the examination made before the trial. Had he done so, then the expert could have testified as to his opinion of the effect the injury would have produced upon the mind of the accused. The rule governing the testimony of experts is thus laid down in Lawson on Exp. & Op. Ev. (2d ed.) 257, rule 42: "An expert may give an opinion based on a state of facts which he himself has witnessed, or which are detailed by other witnesses, or which are put before him in the form of a hypothetical case." See also Taylor, Med. Jur. (Clark Bell's ed.) 53 et seq.

2. The next ground of the motion which was insisted on was, that the court allowed certain witnesses to testify, over the objection of the accused, as to his sanity, without giving the facts or reasons upon which their testimony was based. We have carefully read the testimony of these witnesses, and find that each of them stated the length of time he had known the accused and the frequency with which he met or was thrown with him, and that he had never seen about him anything to indicate unsoundness of mind. The substance of their evidence was, that after intercourse with the accused for a number of years, a knowledge of his character, and observation of him at church, in Sunday-school, and at the court-house, as well as on other occasions, they had in all these years seen nothing in his ap-

pearance or conduct to indicate in any way that he was not of sound mind. While it is true that non-expert witnesses can not give opinions without stating the facts upon which the opinions are based, we think the facts stated by these witnesses were sufficient to form the basis of the opinions given. There is no other way, so far as we know, in which a non-expert can form an opinion as to a person's sanity than observation of his acts and doings, — observation of his ordinary and every-day appearance and conduct. One may associate for years with another and see no signs of unsoundness of mind, and, if asked to give his opinion in regard to the matter, could only make just such a statement of facts on which to predicate his opinion as was given in this case, — that he had observed nothing which would seem to indicate insanity. A witness may base his belief that one is insane upon some particular and peculiar conduct or upon something in the appearance, and may easily state just what it is upon which his opinion is based. Where the belief in one's insanity is a general impression, the facts upon which it is based would be more difficult of statement. Where the witness believes that the person about whom he is testifying is of sound mind, he can then usually testify only in a general and negative manner, — that he has noticed nothing about him to indicate that he is not of sound mind. It is somewhat analogous to proof of general good character. One may live for years in the neighborhood of another, never hear his character impeached or any remarks or rumors concerning it, and form an opinion that his character is good because he has never heard anything against it. *Powell* v. *State*, 101 *Ga.* 9, and cases cited. The identical question made in this case has, however, been settled by decisions of this court. In *Walker* v. *Walker*, 14 *Ga.* 242, the question was made, and the court decided that the witnesses gave sufficient facts and circumstances upon which to base an opinion as to the sanity of the decedent; following the rule laid down in *Potts* v. *House*, 6 *Ga.* 324. In the case of *Taylor* v. *State*, 83 *Ga.* 647, it was held: "Knowledge of the defendant for a long time by witnesses, and his always acting like a sane man, were facts upon which they could base opinions as to his sanity." See also an elaborate discussion of the subject in Lawson on Exp. & Op. Ev. (2d ed.) 532 (rule 64, sub-rule 4).

3. The ruling made in the third headnote is supported by repeated decisions of this court, among them the following : *Bowens* v. *State*, 106 *Ga.* 760, and cases cited ; *Robinson* v. *State*, 109 *Ga.* 506 ; *Owens* v. *State*, 110 *Ga.* 292 ; *O'Neill Mfg. Co.* v. *Pruitt*, 110 *Ga.* 577.

4. The evidence amply supported the verdict.

*Judgment affirmed.　　All the Justices concurring.*