GLOVER *v.* THE STATE.

1. "The affidavits of jurors may be taken to sustain, but not to impeach their verdict."

2. That the trial judge after hearing a motion for a change of venue indicated his purpose to sustain it, but subsequently, upon further consideration of the matter, and without having heard any further evidence, passed an order overruling the motion is not cause for a new trial.

3. The fact that the trial judge, during the progress of the trial, stated to counsel, in the presence of the jury, that a named witness, who had testified for the defense upon the question of the sanity of the accused

at the time of the commission of the alleged crime, did not claim to be an expert in such a case, or to have any peculiar knowledge upon the subject, is not cause for a new trial, when it is not alleged that such statement of the judge was not correct.

4. It was not error to permit counsel for the State, over objection, to ask a witness for the defense if, in his opinion, certain circumstances which he had assigned as his reason for believing the accused to be of unsound mind were, in themselves, sufficient to indicate that he did not know that it was wrong "to go and shoot a helpless woman down in the mill and keep pumping lead into her until she was dead," although the witness had not testified that the accused did this, and even though the court had refused to allow counsel for the defense to propound a similar question to a State's witness.

5. It is well settled that a non-expert witness may give his opinion as to the sanity of another person, based upon his acquaintance with him and the manner, appearance, and conduct of such person during the time that the witness has known him.

6. Where the court charged the jury that if it appeared from the evidence that the accused, at the time he slew the deceased, knew the difference between right and wrong, but did not have power of mind and will sufficient to keep him from killing her, he would not be guilty of murder; and then, immediately, gave the general rule, that the insanity which the law recognizes as an excuse for crime must be such as dethrones reason and incapacitates one for distinguishing between right and wrong, an assignment of error, in a motion for a new trial, that these instructions were conflicting, is without merit.

7. The ground of the motion complaining that the judge, during the progress of the trial, intimated "his opinion of the case" was without merit, as in none of his remarks, quoted in this ground, which were made in connection with various rulings, or in colloquies with counsel, did he intimate his opinion of the case.

8. It is not cause for a new trial that the judge allowed a given question to be propounded to a witness, when it does not appear what objection, if any, was made to the question, nor what answer, if any, the witness made thereto.

9. The question whether a witness offered as an expert is qualified to give his opinion upon a given subject under investigation is one for the court, and not for the witness. Hence the mere fact that the witness, in his testimony, may disclaim to be an expert is no reason for refusing to allow him to testify as one.

10. The fact that the trial judge, upon objection being made to the competency of a witness offered as an expert, expressed his opinion as to the sufficiency of the preliminary testimony of the witness to show that he was one, is not cause for a new trial.

11. Grounds of a motion for a new trial not referred to in the brief of counsel for plaintiff in error are treated as abandoned.

12. The evidence warranted the verdict, and the court did not err in refusing to grant a new trial.

Argued November 18.—Decided December 10, 1907.

Indictment for murder. Before Judge Hammond. Richmond superior court. August 12, 1907.

*A. L. Franklin* and *C. A. Picquet,* for plaintiff in error.

*John C. Hart, attorney-general, J. S. Reynolds, solicitor-general,* and *Boykin Wright,* contra.

FISH, C. J. Arthur P. Glover was convicted of murder, and upon his motion for a new trial being overruled he excepted.

1. Two of the grounds of the motion complained of the alleged misconduct of the jury which returned the verdict. The only evidence in support of these grounds was the affidavit of one of the jurors, which was contradicted by the affidavits of all the other jurors. It is only necessary, in disposing of these grounds, to quote the language of the Civil Code, §5338: "The affidavits of jurors may be taken to sustain, but not to impeach their verdict."

2. Another ground of the motion was, that after six jurors had been selected to try the case and eighty-four had gone off for cause, counsel for the accused renewed their motion for a change of venue, and "the court granted the same, stating to the counsel for the defendant and State to agree upon a county; if not, the court would select a county;" the judge further stating: "I will let the case go over until to-morrow morning before I take action in that matter." Counsel for the State and counsel for the accused agreed upon another county before the court convened the next morning, and counsel for the accused asked the court to grant an order changing the venue to the county thus agreed upon. The court refused the motion, and ordered the case to proceed. The assignment of error is, "that the court had entertained serious doubt the afternoon before that a fair and impartial trial could be had in Richmond county, and no evidence had been introduced in the presence of defendant's counsel to remove said doubt or produce further evidence." This ground is wholly without merit. The court did not finally pass upon the motion for a change of venue until the morning after it was made, and it was certainly not erroneous to then decide the question presented without hearing evidence to remove any doubt that the court might have entertained on the subject the afternoon before. The ruling of the judge refusing to grant the motion for a change of venue, being made under the circumstances stated, clearly indicates that whatever opinion he may have at first entertained as to the merits of

this motion, under the evidence submitted, he, upon a further and fuller consideration of the question, was of opinion that a case for a change of venue had not been made out. The question whether the judge was right or wrong in this conclusion does not depend upon his mental attitude in reference to this question on the afternoon before he really passed upon it, but upon a consideration of the evidence which he deemed insufficient to sustain the motion.

3. Complaint was made that the court intimated to the jury what had been proved in the case, by saying in their presence that Dr. Wade, a witness for the accused, did not, in his testimony, claim "to be an expert on these cases [cases involving the question of insanity] or to have any peculiar knowledge on that subject; yet he was permitted to testify not only to his opinion derived from facts within his own knowledge, but there was also propounded a very lengthy and comprehensive hypothetical question by counsel for the defendant." It is clear that the judge did not, in this statement, intimate to the jury what had been proved in the case. There was, however, a positive statement by the judge that the witness referred to had not, in his testimony, "claimed to be an expert in these cases, or to have any peculiar knowledge on the subject," and unless this statement by the Judge was incorrect, the accused had no cause for complaint. The matter would be different if the judge had stated that the witness had not been shown by the evidence to be an expert in insanity cases, for he would then have been expressing an opinion upon the evidence; but when he merely stated that the witness had not claimed, that is, had not testified, that he was an expert in such cases, he simply undertook to state a fact, and if he stated it correctly, no error was committed. A statement by the court that a witness said a certain thing, or did not say it, is not, in a legal sense, an expression of opinion as to the evidence. *Williams* v. *Hart,* 65 *Ga.* 201 (5); *Wiggins* v. *State,* 80 *Ga.* 468 (5 S. E. 503). Of course, the statement by the court that the witness had been permitted to testify to his opinion, derived from facts within his own knowledge, and that a lengthy hypothetical question had been propounded to him by counsel for the defendant, was not an expression of opinion upon the evidence.

4. There was no merit in the complaint that counsel for the State was permitted, over the objection of the accused, to ask, on cross-examination of a witness for the defense, if, in the opinion

of the witness, certain circumstances which he had assigned as his reason for believing that the accused was of unsound mind were, of themselves, sufficient to indicate that the accused did not know it was wrong "to go and shoot a helpless woman down in the mill and keep pumping lead into her until she was dead." The fact that the witness had said nothing about the accused so shooting the woman did not render the question inadmissible. Nor was the fact that the court had refused to permit counsel for the defendant to ask a similar question, on the cross-examination of a State's witness, a good objection to allowing this question to be asked.

5. Another ground of the motion was that the court erred in permitting the following question to be asked a named witness for the State, and in admitting his answer thereto: "Q. From the term of your acquaintance, judging by his manner, appearance, and conduct, would you say whether he [the accused] was sane or insane? A. I would say he was sane." "Counsel for the defendant [urged] the objection that said witness had not narrated the facts upon which to base his opinion;" and "that said question was an interrogation as to a fact and not as to the witness's opinion." The question was evidently framed to elicit the opinion of the witness as to the mental condition of the accused, based on his manner, appearance, and conduct during the acquaintance of the witness with him. It is well settled that a non-expert witness may give his opinion as to the sanity of another, based upon such facts as are set out in this question. *Proctor* v. *Pointer,* 127 *Ga.* 134 (56 S. E. 111); *Herndon* v. *State,* 111 *Ga.* 178 (36 S. E. 634), and cases cited.

6. It is claimed that the court erred in instructing the jury as follows: "Should it appear from the evidence that Glover, at the time he slew Maud Dean, knew the difference between right and wrong, but did not have power of mind and will sufficient to keep him from killing her, he would not be guilty of murder; the insanity which the law recognizes as an excuse for crime must be such as dethrones reason and incapacitates one from distinguishing between right and wrong." The error assigned was that "such charge was conflicting and confused the jury;" but the only contention in the brief of counsel for plaintiff in error is that it was conflicting. The second clause of this excerpt from the charge correctly states the general rule as announced in *Spann* v. *State,* 47

*Ga.* 553, and followed in *Brinkley* v. *State,* 58 *Ga.* 296. See also *Graham* v. *State,* 102 *Ga.* 650 (29 S. E. 582). The exception to the general rule was broadly stated in the first clause. *Allums* v. *State,* 123 *Ga.* 500 (51 S. E. 506). The charge was not conflicting The exception recognized by the authorities, and which the accused would alone have been entitled to have given in charge to the jury, if there were evidence sufficient to authorize such instruction, is: "If a man has reason sufficient to distinguish between right and wrong as to a particular act about to be committed, yet, in consequence of some delusion arising from a diseased mind, his will is overmastered and he is impelled to do that act, there is no criminal intent, provided the act itself is connected with the particular delusion under which the prisoner is laboring." *Roberts* v. *State,* 3 *Ga.* 310; *Flannagan* v. *State,* 103 *Ga.* 619 (30 S. E. 550); *Taylor* v. *State,* 105 *Ga.* 776 (31 S. E. 764); *Allums* v. *State,* supra. The broad language which the court used in stating the exception was, therefore, favorable to the accused. Moreover, after scrutinizing the evidence, we are fully satisfied that there was nothing in it which authorized in instruction on the exception to the general rule in cases where insanity is relied upon as a defense.

7. Another ground of the motion for a new trial was, that during the progress of the trial the judge intimated "his opinion of the case by the following remarks to defendant's counsel, to wit:" Then follow several pages of recital, in detail, of various incidents of the trial and the remarks of the judge in making different rulings in connection therewith and in colloquies between himself and counsel for the accused. We have carefully considered all of such remarks, and find that none of them tended to intimate an opinion as to what had or had not been proved, and that the language of the judge could not be construed as an intimation of any view which he might entertain as to the case. We are sure that no good purpose could be served by setting out even the substance of all of this very lengthy ground of the motion, but will quote two or three extracts therefrom, as fair samples of the whole. (*a*) "Mr. Franklin, of counsel for defendant, said: 'If your honor please, one of the jurors wants to say something to you,' and the court replied: 'You have nothing to do with that. I will be glad to hear from the juror.' Shortly thereafter, and after two other jurors had been passed upon, Mr. Franklin arose and said:

'If your honor please, a juror, two or three jurors preceding, who disqualified for the reason that he did not understand the questions propounded, now wants to make an explanation and ask a question of the court, to see if he was legally disqualified, and I ask that he be permitted to do it.' The court: 'I have already stated to you that you have nothing to do with that.' Mr. Franklin: 'I understand that, but I want to go on record. Now, if your honor please, I want to ask that this jury as stricken be withdrawn because of the remarks of the judge to counsel, for the reason that it preju-dices his case.' The court: 'The motion is overruled.' Mr. Picquet: 'The Sibley Mfg. Co. is also a prosecutor in this case, and I request that your honor ask the jurors on the array whether any of them are stockholders in that company.' The court: 'I will not do so.' Mr. Picquet: 'Then we ask permission to put in proof that the Sibley Mfg. Co. has employed counsel, and is one of the real prosecutors.' The court: 'I decline to entertain any such investigation.'" (b) "Mr. Wright: 'Hold on! The only witness to whom a hypothetical question can be put is an expert, and just the contrary is the fact with reference to this witness who is not an expert. He must testify to the facts stated first from his own knowledge.' Mr. Picquet: 'He asked the very question himself yesterday.' The court: 'Regardless of whether it was asked by that side or not, if you are asking the question upon the assumption that error has been committed on the other side, I want to state that such a hypothetical question on the direct examination put to a non-expert witness is improper; and without the slightest disrespect to counsel, I want to have an understanding now, that that question must not be put again. That kind of question stands on an entirely different footing from the same question addressed by the other side to the witness. The other side asks that kind of question to test the value of the deductions of the witness and of his testimony, seeking to discredit his testimony by showing that he has an exaggerated or foolish idea himself of what shows insanity.'"

8. Several grounds of the motion assigned error because the court allowed State's counsel to propound specified questions to witnesses, it not appearing what objections were made to the questions at the time they were propounded, nor what answers the wit-

nesses made. As this court has frequently ruled, such assignments of error are not well made.

9. Two grounds of the motion assign error because Dr. Morgan, a witness for the State, was permitted, over objection, to testify as an expert as to insanity. In one of these grounds it is alleged that the witness, after having testified "that his only experience in mental diseases was such as came to him as a physician in general practice, and that he had made no special study of the subject, nor had any experience that would make him a specialist or expert on nervous diseases, was allowed, over objection of defendant's counsel, to answer the following question, to wit: 'What is the difference between idiocy and lunacy?' the answer of the witness being given. There are two assignments of error in this ground, the first being that it was error to allow "a physician who expressly disclaimed to be an expert to differentiate and define the different forms of insanity." The other assignment is in the following language: "Because the court in his ruling on the question said that though the physician disclaimed to be an expert, yet if the evidence showed that the witness is capable from his experience, education, and observation to give an opinion and to be treated as an expert, it is proper that he should be so treated, notwithstanding the fact that he disclaims being an expert. 'I think the testimony is proper. Go ahead.' The error being that the court in effect told the jury that though the physician disclaimed being an expert, the evidence showed the court that he was an expert and could answer any question that could be propounded to an expert." In the other ground complaint is made that this same witness, "who disclaimed to be an expert," was permitted, over objection, to answer a stated hypothetical question. There was no error in either of these rulings of the court. The question whether the witness was or was not an expert was not one to be determined by him but by the court. It was rightly held in Crow *v.* State, by the Court of Criminal Appeals of Texas, 33 Tex. Cr. 264 (26 S. W. 209), that, "If a witness's testimony shows him an expert, his statement that he is not an expert does not deprive his testimony of the quality of expert testimony." A witness might have such a very modest estimate of his own abilities and qualifications to give an expert opinion upon a given subject as to disclaim being an expert in reference thereto; and yet his testimony as to his education, study, experience, investigations,

and the extent and scope of his practice or work in his profession or avocation might be such as to show him well qualified to give such an opinion. On the other hand a vain or conceited person, called as an expert witness, might, in the most positive terms, declare himself to be one in reference to the subject under investigation, and yet his other testimony might disclose such woeful ignorance and want of intelligent observation and experience in the premises as to render his opinion of no value whatever. It would be a dangerous rule to allow the question whether a particular witness is, or is not, an expert as to the question under consideration to depend solely on the witness's opinion of his own qualifications in reference to the matter. The testimony of this physician is a good illustration of the fact that a witness may by his testimony show himself to be sufficiently qualified, within the contemplation of the law, to give an expert opinion to the jury upon a given subject under investigation, and yet at the same time himself disclaim such qualification. He testified, that he was a physician and surgeon and had practiced medicine for twenty-one years, received his diploma from the Medical Department of the University of Georgia, and had been to other schools since his graduation, among them the Polyclinic of New York and the University of Virginia. In the line of his profession, he had been president of the State Association, President of the Surgeons of the Central Railway Company, President of the Alumni Association of his school, City Physician, Coroner's Physician, President of the Board of Health of Augusta, Health Officer of Richmond County, a member of the State Board of Health, and had held various minor positions. He was demonstrator of anatomy in the medical college of the University of Georgia, first, and then special lecturer on various diseases, at times, until he became a professor of chemistry and pharmacy, and for the last three years he had occupied the chair of anatomy and clinical surgery. He further testified: "I have had occasion to examine the mental and nervous diseases and the writings on that subject only so much as comes to a physician in general practice. I have made no special study of it, nor have I had any experience that would make me a specialist or expert in nervous diseases. As a physician with a large practice, and especially as Coroner's Physician, and as City Physician, I have had considerable experience in brain matters, about as much as the average man, probably not more. I do not

know but what I have had a little more than the average man. I have been called in consultation quite a few times on brain matters, and nervous diseases. Some of the leading authorities in my profession upon the subject of insanity are Starr, Berkly, Pierce, and Sacks. . . I have had occasion to take out of the skull and study and examine the convolutions and peculiarities of more than a hundred brains. It is part of my branch in the school now to lecture on the brain—on the structure of the brain. I do not go much into the function. . . I do not consider myself an expert. I just consider myself an ordinary practitioner. I doctor pneumonia, and I doctor typhoid fever. I am not an expert in typhoid fever, but I have seen hundreds of cases. While I say I am not an expert on the brain and brain diseases, I am just about as much an expert on that as I am on the other branches of practice. I say I practice in cases of pneumonia and in cases of typhoid fever, and in cases of brain trouble, and I consider myself just as much an expert in the one as in the other." We think it very clear from this testimony that the court properly held that this learned and experienced physician and surgeon· could testify as an expert in response to each of the questions the allowance of which by the court is complained of as above indicated. If the seal of silence could be placed upon his lips when these questions were propounded to him; because he disclaimed being an expert as to such matters, then by the same reasoning, if he were offered as an expert witness in a case involving opinion as to typhoid fever, he ought not to be permitted to testify as an expert. We think that the proof as to the qualifications of this witness was exceptionally full and satisfactory, more so than was absolutely necessary in order to admit his opinions in evidence before the jury. "The rule obtaining in most jurisdictions is that a general practitioner of medicine is a competent witness concerning insanity, and that a special study of that subject is not required." 12 Am. & Eng. Enc. L. 452. See also Lawson's Exp. & Op. Ev. 136. This is the rule which prevails in this State. *Potts* v. *House,* 6 *Ga.* 324 (50 Am. D. 329) ; *Taylor* v. *State,* 83 *Ga.* 647 (10 S. E. 412) ; *Macon Railway & Light Co.* v. *Mason,* 123 *Ga.* 773 (51 S. E. 569). In *Faulkner* v. *Faulkner,* 84 *Ga.* 73 (10 S. E. 504), plaintiff in error, who was defendant below, upon the trial of the case, had introduced as a witness a physician who testified as to the mental capacity of a

grantor, and in the motion for a new trial it was alleged that the court erred in not informing the jury, in its charge, who were expert witnesses. This court held, that the charge "was not erroneous for not stating that the physician was an expert witness; it being presumable that this fact was insisted upon by defendant's counsel."

10. The assignment that the judge erred in expressing an opinion upon the evidence is obviously without merit. He could not decide the question raised by defendant's objection, without deciding that the witness had been shown by the testimony to be an expert. When preliminary evidence, upon the sufficiency of which other evidence is dependent, is introduced, the trial judge is bound to decide whether such preliminary evidence is sufficient for the purpose for which it is offered, for unless he does decide this question in the affirmative, such other evidence can not be introduced. In this case, for instance, when the competency of the witness as an expert was challenged by the objections to his testimony, the judge was bound to decide whether he was or was not so competent, and he could not decide this question without expressing or intimating his opinion as to the sufficiency of the preliminary evidence to show the witness to be an expert.

11. A number of the grounds of the motion for a new trial are not referred to in the brief of counsel for plaintiff in error, and therefore they are treated as abandoned.

12. The evidence warranted the verdict, and the court did not err in refusing to grant a new trial.

Judgment affirmed. All the Justices concur.