### 20186. OGLETREE *v.* THE STATE.

DECIDED JANUARY 14, 1930.

*L. B. Wyatt, L. M. Wyatt,* for plaintiff in error.

*L. L. Meadors, solicitor,* contra.

LUKE, J. Lon Ogletree was convicted of possessing whisky. He now excepts to the overruling of his motion for a new trial, based on the usual general grounds, and on two special grounds complaining of language used by the solicitor in addressing the jury.

T. J. Ogletree, his two sons, Lon and Loomis, and the boys' stepmother lived in the home of T. J. Ogletree. Mrs. Ogletree had a

son, Albert Morris, who did not live with the Ogletrees. The defendant and his brother Loomis roomed together in their father's home. Several policemen found twenty pint-bottles of whisky behind a davenport in the room occupied by the defendant and his brother. The defendant was not at home, and was arrested two weeks later in Alabama. T. J. Ogletree testified that he and his wife had just come from a funeral, and that the whisky was not his. Loomis Ogletree swore that the whisky did not belong to him. R. B. Carter testified that on August 25, 1929, he walked up on Bob Cutwright and the defendant and several others in a thicket about a hundred yards below Cutwright's home; that Cutwright had in his lap a five-gallon jug of whisky with a rubber tube in it; that the defendant had hold of the tube, and was filling bottles from the jug, and that when he would fill a bottle he would hand it to Grady Smith, who would cork it up; that ten bottles had been filled; and just before the witness reached the scene he heard defendant say, "Hell, is that all the damned bottles we've got?" Bob Cutwright testified in effect that the defendant and others came to his house and asked him if he wanted a drink of whisky; that they then walked down in the thicket to the five-gallon jug of whisky; and that he was merely helping bottle whisky which he knew nothing about. A witness testified for the defendant that on the afternoon of the day the whisky was found in the defendant's room, he saw the defendant's stepbrother go to the defendant's home with a large package of some kind under his arm. Another witness swore that he, the defendant, and several others, went to Cutwright's to get some whisky from him, and that the defendant was not near the whisky and had nothing to do with it.

The defendant stated that he never touched any whisky at Cutwright's, and was standing six or seven feet from where Cutwright was filling the bottles; that he knew nothing about the whisky being in his room; and that when he heard that his stepbrother had carried the large package to his home, and that the officers had found whisky in his room, he knew that he would be arrested, and went to Alabama because he could not give bond. Unquestionably the evidence supported the verdict.

The first of the two special grounds of the motion for a new trial alleges that the following statement of the solicitor to the jury was highly prejudicial to the defendant's case and prevented him from

getting a fair trial: "Bob Cutwright has been tried in this court and acquitted." The second special ground complains that the solicitor, in addressing the jury, used this language: "Gentlemen, you have on trial the chief bell well bootlegger of the Hillside Community." It is insisted in the ground that "even though the trial judge cautioned the jury not to consider the statement, yet the nature of the statement was so highly prejudicial that the defendant could not obtain a fair trial." Practically this same language was used in the first special exception. Neither of these special grounds shows that a motion for a mistrial was made, or that any objection was interposed to the alleged injurious statements of the solicitor, and both grounds show that the court "cautioned the jury not to consider the statement."

If counsel was not satisfied with the court's admonitions to the jury, and thought that notwithstanding them his client's case had been so prejudiced by the solicitor's remarks that he could not get a fair trial by the jury that heard them, he should have made a motion for a mistrial. Under the circumstances in this case, the defendant could not sit quiescent while the alleged injurious remarks were being made by the solicitor, take the chance of an acquittal, and then, after conviction, successfully ask for a new trial because of those remarks. See *Herndon* v. *State,* 111 *Ga.* 178 (3) (36 S. E. 634) ; *Patton* v. *State,* 117 *Ga.* 230 (10) (43 S. E. 533) ; *Bird* v. *State,* 142 *Ga.* 596 (6) (83 S. E. 238, Ann. Cas. 1916C, 205) ; *Redd* v. *State,* 28 *Ga. App.* 483 (111 S. E. 685).

The evidence supports the verdict, and for no reason assigned did the court err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*