## McWILLIAM *v.* PATTILLO.

772

No. 8404.   November 12, 1931.

*V. E. Adams,* for plaintiff in error.
*Paul S. Etheridge & Sons,* contra.

Beck, P. J. Mrs. Myrtie Pattillo offered for probate the will of Mrs. E. E. Ewing, deceased. D. H. McWilliam filed a caveat. By consent the case was appealed to the superior court. The caveat was based upon the grounds that the testatrix was without mental capacity to make a will; that undue influence had been exerted by the father of the propounder and by Mrs. Dodd, legatees named in the will; that these parties, alleged to have used undue influence, had made false and fraudulent representations and statements to the testatrix when she was mentally incapacitated, not having any fixed will of her own. Further, that the false and fraudulent statements of the parties consisted of statements with reference to the attitude of the caveator towards the testatrix. And again, that the alleged will was based upon mistake, it being claimed, as one part of the will indicated, that testatrix considered that her brother, the caveator, had failed to account for money loaned to him by the mother of the testatrix and caveator, and that he had hindered the winding up of the mother's estate. There were other grounds of the caveat alleging that the caveator had properly disposed of the property belonging to the estate of his mother, Mrs. G. A. Mc-William; that the testatrix was under the impression that upon the death of their mother the caveator had failed to account for money loaned to him and had hindered the winding up of the estate, and that it had been necessary to employ an attorney to get an adjustment, etc.; that the legatees named in the will had, by misrepresentations and statements made to the testatrix, caused her to think and believe that caveator was trying to beat her out of her own property and her part of her own estate, which caveator alleges is not true; that the legatees took advantage of the decedent's mental incapacity to make her believe things which they knew were not true, for the purpose of getting her to will the property to them. And the caveator further alleged that the testatrix had not by her own efforts accumulated one penny in property or other thing of value; that all she had and possessed had been inherited from her father and mother, and that it had been largely accumulated by the efforts of caveator himself.

Upon the trial of the case in the superior court the jury rendered a verdict for the propounder, setting up the will. The caveator made a motion for a new trial, which was overruled, and he excepted.

■ In the fourth ground of the motion error is assigned upon the failure of the court to sustain the objection to the following question propounded to a witness by counsel for the propounder: "What was her [testatrix's] mental condition at that time?" This was objected to on the ground that "no reasons had been given, and it was not shown that the witness had any opportunity to judge of her mental condition, just merely being called as a witness." To this objection the court said: "I understand the witness must first give his reason for forming his opinion, and then he can give his opinion; but he must first state the circumstances and what he knows, and then give the opinion." This ground does not show error. The ruling of the court was a proper one. If the witness had not stated facts that authorized the giving of his opinion, then counsel for movant should have requested an express ruling excluding the testimony. That was not done.

■ ▪ The rulings stated in headnotes 2 to 7, inclusive, require no elaboration.

■ Error is assigned, in the 15th ground of the motion, upon the refusal of the court to rule out the following testimony introduced by propounder: "I never knew of anything wrong with her mind, and I never heard of it. I would say the condition of her mind was as good as anybody's I ever saw. Before her illness, her mental capacity was above the average. I would say it was as good or better than mine." The objection urged was as follows: "In view of the fact that this witness has been unable to recollect the substance or repeat a single conversation or subject discussed or a single word Mrs. Ewing repeated to him during that illness, I move to exclude that she was all right; he has not told a thing she said or a thing that she did or talked about." The court did not err in admitting this testimony. While this witness was not an expert, he testified in part as follows: "I had known her practically all her life. I never knew anything wrong with her mind, and never heard of it. I saw her every day or night during her illness and talked to her, and she would answer any question you would ask her. She knew me, and I would go and converse with her; and from my seeing her I would say the condition of her mind was as good as anybody's I ever saw. Before her illness, her mental capacity was above the average. I would say it was as good or better than mine. I don't know that I could repeat any conversation I

had with her right offhand. I would have to think about it. I don't know what we talked about. Whether I saw her March first, I don't know just what day she was taken sick, but I saw her every day from the time she was taken sick until she died. . . The first knowledge I had of the will was after I came home from work. I worked all day that day the will was made. When I came by her home that evening, I always came by there, she said something or other about it. She says, 'I want to see you about getting parties to sign my will.' She said she wanted to get Dr. Howard and Mr. Peek and Mr. Ward, and wanted them to come to her house."

This evidence, if credible, shows that while the witness could not recollect or repeat any conversation that he had with Mrs. Ewing, and could not state the subject discussed between them, he had conversations with her; that he saw her and heard her talk, and had other opportunities of judging of her mental capacity. These facts show that it was proper for the court to admit this evidence. In the case of *Herndon* v. *State,* 111 *Ga.* 178 (36 S. E. 634), it was said: "The next ground of the motion which was insisted on was that the court allowed certain witnesses to testify, over the objection of the accused, as to his sanity, without giving the facts or reasons upon which their testimony was based. We have carefully read the testimony of these witnesses, and find that each of them stated the length of time he had known the accused and the frequency with which he met or was thrown with him, and that he had never seen about him anything to indicate unsoundness of mind. The substance of their evidence was, that after intercourse with the accused for a number of years, a knowl-'edge of his character, and observation of him at church, in Sunday-school, and at the court-house, as well as on other occasions, they had in all these years seen nothing in his appearance or conduct to indicate in any way that he was not of sound mind. While it is true that non-expert witnesses can not give opinions without stating the facts upon which the opinions are based, we think the facts stated by these witnesses were sufficient to form the basis of the opinions given. There is no other way, so far as we know, in which a non-expert can form an opinion as to a person's sanity than observation of his acts and doings,—observation of his ordinary and every-day appearance and conduct. One may asso-

ciate for years with another and see no signs of unsoundness of mind, and, if asked to give his opinion in regard to the matter, could only make just such a statement of facts on which to predicate his opinion as was given in this case,—that he observed nothing which would seem to indicate insanity." And in *Taylor v. State*, 83 *Ga.* 647 (10 S. E. 442), it was held: "Knowledge of the defendant for a long time by witnesses, and his always acting like a sane man, were facts upon which they could base opinions as to his sanity."

The rulings stated in the 9th and 10th headnotes require no elaboration.

The grounds of the motion not specially referred to show no cause for reversal of the judgment denying a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Hines, J., who dissent.*