61102. RAINS v. FORD MOTOR COMPANY.

BIRDSONG, Judge.

Workers' Compensation. The Administrative Law Judge (ALJ) and the State Board of Workers Compensation awarded compensation based significantly on aggravation of preexisting gynecological and urological conditions, and the employer Ford Motor Co. appealed to the superior court. The employer apparently convinced the trial judge that there was no competent evidence in support of that part of the administrative award, as that is what he held in reversing it. The claimant appeals the order of the trial court. *Held:*

We reverse. The evidence shows that in the second or third week of October, 1977, the claimant, who was working on "drive-out" at Ford Motor Co., slipped in a puddle of oil, water and anti-freeze. As she described it, "my feet flew up in front of me and I threw my arm back to throw my fall, and when I did, it did something to my shoulder and the muscles and the tendons and I landed on my [tail bone]." She was immediately taken to the hospital but the next day she reported to work, although drugged and in pain. Until January, 1978, she worked intermittently, sometimes so "doped up" she did not even remember being at work. She reported to the company doctors that her shoulder and back hurt; they treated her by injecting cortisone in her arm and administering other drugs. Her last day at Ford was in January, 1978. Thereafter, she entered Clayton General Hospital with complaints of bleeding through the rectum and vagina, severe lower abdominal pain with nausea, vomiting and symptoms of urinary tract infection, and blood in her urine since her fall three months earlier. She twice spent several days in the hospital in traction and a brace. She was diagnosed by one orthopedic surgeon as having a herniated disc, by another as having "acute lower back syndrome." Other doctors (urologists) treated her for bladder

problems, but on a recurrence of her symptoms she was referred to a gynecologist in March, 1978. The gynecologist reported that at this time the claimant was having problems with the bladder, a ruptured rectocele (fiber separating the rectum from the vagina), and recurring stress urinary incontinence. She had difficulty in voiding and would lose urine when she would stand, stoop, or cough. She required manual manipulation in order to have a bowel movement. This gynecologist eventually performed several operations, including one which required 22 stitches in the rectum, 28 in the vagina, and 18 down her stomach. After these operations, the claimant's pain and other symptoms persisted and increased. She cannot work. She cannot sit for long periods but must get up or lie down. Sexual intercourse is painful, urination is painful, bowel movements are painful, and she feels a "lump" in her rectum. She had had another operation just prior to the administrative hearing, and traveled to the hearing with a registered nurse whose presence was required because vaginal bleeding might require impaction.

The claimant testified that she had had minor "normal" bladder problems before; 16 years earlier she had had a hysterectomy and several years before the fall had had a hemorrhoidectomy. During her hospital and doctors' visits from January through March, 1978, it was discovered that she had two mild congenital spine defects, and was treated for various urological problems and gynecological problems. She told each of these doctors, as to what had happened to her, that she had had a fall at work.

The problem arising from the extensive and complex evidence in this case is that the claimant has been treated by nearly as many physicians as she has had ailments, nearly every physician arrived at a different diagnosis, and generally each specialist confined his diagnosis to the limits of his specialty. It cannot be disputed that the claimant did have certain pre-existing medical problems; but it is also undisputed that the claimant had not been aware of or significantly treated for any such problems prior to the fall, and that they manifested themselves in force only after the fall.

The administrative law judge plainly found: "I am of the opinion and find in fact that while claimant had many non-job related problems in the bladder and gynecological area, I find that *the fall on claimant's coccyx area so aggravated her numerous other problems as to render her totally disabled* to work commencing on January 13, 1978. While the weight of the medical evidence shows that claimant did not become disabled as a result of the fall but rather from other medical problems not related to the fall, I am of the opinion and find in fact that claimant [has shown] that *her present disability is sufficiently related to the fall to conclude that there was an*

*aggravation to such an extent as to render her disabled. . . ."*
(Emphasis supplied.) While this wording is rather carefully
convoluted, its meaning is clear, and we do not agree with the
employers' interpretation that the administrative law judge found
"that the appellant became disabled, *not* as a result of the fall, but
rather as a result of 'medical problems *not related to the fall*,' [and] . . .
found the appellant totally disabled as a result of *these other
conditions"* (latter emphasis supplied.) We disagree, moreover, with
the characterization of some of the evidence by the employer, and
find that when the evidence is carefully and independently analyzed,
not only is there competent evidence to support the administrative
law judge's award but we think the administrative law judge need not
have been so strained to find that the claimant's injury on the job
aggravated any pre-existing medical problems and that the fall
rendered her totally disabled.

The claimant testified, and the evidence shows, that the onset of
the serious and painful physical symptoms came after her fall. Never
before had she had such a traumatic injury, nor has she had one since.
The evidence shows that any pre-existing problems she did have
manifested themselves in aggravated force, soon and immediately
after the fall. See *Carpenter v. Lockheed Aircraft Corp.,* 93 Ga. App.
213 (91 SE2d 199), as to circumstantial evidence by the claimant. The
gynecologist's carefully guarded and sometimes indirect testimony is
the source of much confusion in the case, but it is clear that he treated
the claimant only for her gynecological problems, whatever the cause,
and did not attempt to concern himself with pathology other than
gynecological; and it is clear that he recognized the claimant
continued to suffer from serious problems related to the fall, whether
those problems were gynecological or otherwise. He reported: "Most
of Ms. Rains' pain post operatively appeared to be related to the
above mentioned [severe fall involving the sacroiliac region and
coccyx]. With the type of problems she had post-operatively it
appeared that the pain was localized to the area of the coccyx [tail
bone]. . . . It is very difficult to imagine that this lady is disabled due to
those [gynecological] operative procedures. The medical conditions
warrant[ing] the [gynecological] surgery are not of a disabling type. . . .
I think that most of her problems are related to the back injury that
she sustained prior to undergoing these surgical procedures. . . . the
injury that this lady has is not a gynecological problem." In
deposition this gynecologist maintained that Ms. Rains' present
difficulties were not the result of her gynecological problems or of the
operations he had performed, and that he (rather vaguely) related
her gynecological disorders to problems she had had in childbirth
(which, we note, was sixteen years before). He said, "[The fall did] not

*necessarily* aggravate the [gynecological] condition, *but just made her more aware of them. . . .*" It is difficult to discern just what this doctor concluded in the case, but, contrary to the employer's assertion in its brief, this doctor definitely did diagnose a broken coccyx.

The orthopedic surgeon who treated Ms. Rains in February, 1978, for "acute lower back syndrome" remarked in deposition that her two mild congenital spinal deformities are common defects which "especially can be aggravated by an injury" and which "especially after an injury" can start giving lower back pain; but that these defects usually do not give back pain without an injury having occurred. He thought Ms. Rains was "having problems with her back because of this congenital abnormality associated with some type of strain that she suffered at the time of the injury." Nearly one year after her fall, another orthopedic surgeon, Dr. Bienert, took x-rays of the coccyx. He discovered that her coccyx was broken and showed a "marked angulation of $60^0$ ; that is, instead of curving down gently as it should normally, Ms. Rains' tail bone jutted inwards at "a tremendous amount of angulation" of about $60^0$ . He testified that her tail bone was thus pressing inward so that a full bladder would be uncomfortable, intercourse would be uncomfortable, bowel movements would be uncomfortable, and sitting down for a prolonged period of time would be uncomfortable. He said the coccygeal angulation is "an aggravation of a symptom complex . . . and I did not say that this coccygeal angulation is the sole cause of her problem but rather an aggravation of her situation." He said the angulation to the degree exhibited by the claimant was in his opinion too severe, and was not likely, to be caused either by congenital angulation or by poor posture, but was most likely due to a traumatic injury, and could have been caused by the fall. The employer contends that Dr. Bienert's testimony is incompetent because "Dr. Bienert stated the coccygeal angulation *could* have been caused by the fall . . . confessed he could express no opinion as to whether or not the fall caused the coccygeal angulation." This is not precisely the full substance of his testimony, which was that the angulation was in his opinion caused by traumatic injury, but quite rightly he could not state that the fall caused the traumatic injury because he was not present at the fall and did not have "before and after" x-rays. Whether the claimant's fall at Ford Motor Co. was the "traumatic injury" which according to Dr. Bienert caused the broken coccyx, was a question for the determination of the fact finder, and the evidence supports the conclusion that the fall did cause the broken coccyx.

The administrative law judge considered Dr. Bienert's disability rating and the evidence at the hearing, and concluded that the

claimant's pain was extensive and severe, and with the anatomical disability rating rendered her totally disabled. The evidence supports the administrative finding that the fall aggravated pre-existing conditions so as to render the claimant totally disabled. As Ms. Rains herself said, "the coccyx bone gives me the most problem which the urethra problem is a problem, but it would be something I could tolerate if it wasn't for the lower back problem and the coccyx bone. I could tolerate the rest." We therefore do not, as did the employer and the trial court, reject the administrative law judge's finding as being based on a conclusion that her urological and gynecological problems were necessarily caused by the fall or were the sole cause of her present disability, but conclude that the evidence supports a finding they were at least aggravated by the severe fall on her tail bone.

In fact, we think the evidence in this case supports a finding that the claimant is disabled, not necessarily in connection with any pre-existing urological or gynecological problems at all, but from the severe pain and debilitation which is evident in the case and which Dr. Bienert associated directly to the broken tail bone. This, we think, is what the administrative law judge attempted to conclude, and it should have been affirmed. See *Turner v. Baggett Tran. Co.,* 128 Ga. App. 801, 806 (198 SE2d 412); and see *American Motorists Ins. Co. v. Brown,* 128 Ga. App. 813, 814 (198 SE2d 348).

The trial court erred in finding there was no competent evidence to support the administrative award, and erred in substituting his finding of fact for that of the administrative law judge. *Speight v. Container Corp. of America,* 138 Ga. App. 45, 46 (225 SE2d 496); *Howard Sheppard v. McGowan,* 137 Ga. App. 408 (224 SE2d 65).

*Judgment reversed. Shulman, P. J., and Sognier, J., concur.*

DECIDED MAY 12, 1981 —
REHEARING DENIED JUNE 17, 1981 —

*Monroe Ferguson,* for appellant.
*N. Karen Deming,* for appellee.

ON MOTION FOR REHEARING.

If there is any evidence to support the award of the administrative law judge, then neither the trial court, nor this court, can substitute a finding of fact.

It is clear that the administrative law judge found as a matter of fact that after the fall by the claimant her condition worsened and she

became totally disabled.

The testimony shows that claimant had preexisting urological problems but that the disabling conditions only appeared *after* the fall. The claimant's evidence to this effect is not the sole evidence supporting the award. Competent medical testimony supports the finding that the injury to the coccyx aggravated her previous urological and gynecological problems. The orthopedic surgeon's testimony was not rendered incompetent by any disclaimer of gynecological or urological expertise. *Glover v. State,* 129 Ga. 717, 724 (9) (59 SE 816); *Braswell v. Owen of Ga.,* 128 Ga. App. 528, 532 (5) (197 SE2d 463). It is clear he was qualified to testify as to the pernicious effects of a broken tailbone generally and as to Ms. Rains specifically.

There is evidence in the record to support the finding of the administrative law judge. The trial court erred in entering an order which made new findings of fact.

*Motion for rehearing denied.*