WATSON *v*. BARTLETT.

62  447
68  141

A reservation, in a deed of land, of "the right of flowing said premises on
said lot," to the grantor, who owns a dam and mill on land not conveyed
by the deed, is not a reservation of an unlimited right of flowage, but
only of a right to flow the land to the extent it is flowed by means of

the dam as it is at the time of the conveyance; and the owner of the dam and mill is liable in damages for any flowage exceeding that limit, made by his raising or otherwise changing the dam.

Such a reservation is for the benefit of the "mill privilege," and annexes to that privilege, as an easement, whatever right of flowage is reserved; and a subsequent conveyance of the "mill privilege" includes and carries with it the easement of the right of flowage reserved, without words describing it in the deed.

CASE, for flowage. Facts found by a referee. The plaintiff's land borders on a natural pond. Adjacent to the plaintiff's land, and bordering on the same pond, is the defendant's land, through which a brook, which is the outlet of the pond, runs. On the brook, a short distance below the outlet of the pond, the defendant has a dam with a mill, and the dam raises the water in the pond above its natural level, so that it overflows to some extent the plaintiff's land. Prior to 1800 Nehemiah Bartlett owned the tract of land which included both the plaintiff's and the defendant's lots. February 21, 1800, he conveyed what is now the plaintiff's land to Reuben Brown, and under that conveyance the plaintiff holds his title. In the deed to Brown, Bartlett made this reservation: "I hereby reserve to myself the mill privilege and the right of flowing said premises on said lot." February 24, 1800, Bartlett conveyed a tract which includes the defendant's premises to John Bartlett, who, in 1850, by deed conveyed them to the defendant, with this addition to the description, "meaning to convey all the mill privilege which I own, and nothing more."

At the time Nehemiah Bartlett made his conveyances in 1800, there were a dam and mill where the dam and mill now are, and the dam was maintained at the same height and in the same place, by the successive owners, during all the time until 1867 and 1868, when the defendant repaired and raised his dam, so that since that time the water of the pond has flowed the plaintiff's land to a greater extent than it did before; and this is the flowage complained of. The defendant has gained no rights by prescription, and has lost none by abandonment and non-user, and the rights of the parties are what they are entitled to respectively, under their deeds and those to their grantors under whom they hold their lands. The referee awarded damages to the plaintiff for the flowage.

*S. M. Wheeler* and *Bingham & Mitchell*, for the defendant.

*Wiggin & Fuller*, for the plaintiff.

ALLEN, J. The plaintiff derives his title from the deed of Nehemiah Bartlett to Reuben Brown in 1800, and the defendant's

right of flowage comes from the reservation in the same deed, which was a reservation of "the mill privilege and the right of flowing said premises on said lot." The "mill privilege" was not upon the land conveyed to Brown and now held by the plaintiff, and was not included within the boundaries of his deed; and the reservation of the right to flow the land conveyed must have been a reservation of a right connected with and for the benefit of the "mill privilege" retained and not conveyed by the grantor. As a part of the "mill privilege," and attached to it, there was a dam of a certain height and a mill then in use and operated by the grantor, and in the absence of other words, the reservation of the right to flow the land conveyed must have been understood to mean of a right to flow in the manner and to the extent it was then exercised. It cannot be presumed, and there is nothing in the language of the reservation, or in the deed, or in the facts of the case, leading to the conclusion, that the parties intended a reservation of an unlimited right of flowing the plaintiff's land, or of a right to flow the land to any extent that the owner of the "mill privilege" might deem profitable in its use. Such a construction of the reservation would put it in the power of the grantor and those holding his rights under it to deprive the grantee and those holding under him of any beneficial use of the land conveyed, and practically to defeat the grant. In giving construction to the reservation, taken together with the deed, the intention of the parties must control, and that intention, most naturally if not necessarily, was to convey according to the actual and rightful state of the property at the time. *Richardson* v. *Palmer*, 38 N. H. 213; *Thompson* v. *Banks*, 43 N. H. 540; *Seavey* v. *Jones*, 43 N. H. 441; *Cummings* v. *Parker*, 61 N. H. 516, 549.

When the conveyance and reservation, on which the parties respectively rest their claims, were made, in 1800, the grantor was possessed of and occupying and using the "mill privilege," with a dam of a certain height and a mill, and during all the time since up to 1867, when the defendant raised the dam, it had been occupied and used by the grantor and those claiming under him in the same manner, with a dam of no greater height than was used when the conveyance was made, and flowing the plaintiff's land to no greater extent than was done at that time. The exercise and enjoyment of the right of flowage by Nehemiah Bartlett, who reserved it, and by those claiming under him including the defendant, and the occupation and enjoyment by the plaintiff and those under whom he claims of his land up to the line of flowage, recognized and acquiesced in by the owners of the mill privilege, was a practical construction of the deed and reservation, and a definition, location, and establishment of the rights of the parties holding under the deed. By that construction and location the limit of the defendant's right of flowing the plaintiff's land was fixed at the line of flowage as it existed when the deed was made,

and the right was reserved. *Prescott* v. *Hawkins*, 12 N. H. 26; *Newmarket Manufacturing Co.* v. *Pendergast*, 24 N. H. 54, 66; *Hanson* v. *Russel*, 28 N. H. 111.

The reservation of the right of flowage created an easement in favor of the owner of the "mill privilege," and, to the extent of that right, a burden upon the plaintiff's land. The easement thus becoming annexed to the "mill privilege," the conveyance of that, or of the land including it, carried with it the easement of the right of flowage without words describing it; and the defendant, by his deed of the land described as the "mill privilege," acquired title to the right of flowage, as reserved in the deed of Bartlett to · Brown. *Barker* v. *Clark*, 4 N. H. 382; *Seavey* v. *Jones*, *supra*. But the defendant has no greater right than was acquired under the reservation in the deed of 1800, and that right is limited to the line of flowage as it then existed. The right has not been enlarged by further grant, nor by long continued adverse use. He has acquired no right, as he claims, "to flow the plaintiff's land to any extent he may find beneficial to himself," but is limited to the right as it was exercised and enjoyed prior to 1867; and for the flowage of the plaintiff's land beyond, by raising his dam or by other means, he is liable in damages.

*Judgment for the plaintiff on the report.*

BLODGETT, J., did not sit: the others concurred.