Coös,
Jan. 2, 1906.

## FLINT *v.* UNION WATER POWER CO.

The operation of physical agencies may be shown by direct observation or by
the testimony of those who have observed it.
The fact that a witness was permitted to give expert testimony implies a
finding by the trial court that he was qualified to testify in that capacity.
In an action for the wrongful flowage of land, a witness acquainted with the
land and its value may state his opinion as to the amount of damage occa-
sioned by the flowage.
A deed of "all rights of flowage of any lands" belonging to the grantors
upon certain lakes and rivers, "including, also, all right" the grantors
have "to flow the land of others by any of said dams, intending hereby
to convey all right of flowage of any lands" in the county, "caused by any
of said dams, wherever situate, above or below said dams, and however the

right may have been acquired, . . . to the end that the grantees may have and enjoy the same rights of flowage " as the grantors " now have the right to enjoy," conveys the right of flowage by one of said dams that was customarily exercised at the date of the deed.

CASE, for flowage. Trial by jury and verdict for the plaintiff. Transferred from the September term, 1904, of the superior court by *Peaslee*, J.

The plaintiff's evidence tended to prove a record title to the premises (located in Wentworth's Location) from 1851, possession and use by the various holders of the title, a customary control of the water in the Magalloway river adjoining the premises by the dam at Errol operated by the defendants and their predecessors in title down to 1887, the building of a new dam at that time, and an increased flowage thereafter.

The defendants' evidence tended to prove that the plaintiff's title originated in a tax sale about 1850; that in 1877 Coe & Pingree held the record title to Wentworth's Location and to the Errol dam, and then conveyed to the defendants' grantors the land on which the dam stood, and " all rights of flowage of any lands belonging to us [them], or either of us [them], upon Lake Umbagog, and also upon the Androscoggin and Magalloway rivers and their tributaries, including, also, all right which we [they] have to flow the land of others by any of said dams; intending hereby to convey all right of flowage of any lands in said county of Coös, caused by any of said dams, wherever situate, above or below said dams, and however the right may have been acquired, .—whether by purchase, grant, prescription, or otherwise,—to the end that the grantees may have and enjoy the same rights of flowage, and to the same extent over all said premises, as we [the grantors] now have the right to enjoy."

At a view of the premises by the jury, the plaintiff called attention to a newly dug hole some rods from the river, to the water in the hole, and to its height as compared with the level of the river. A civil engineer testified that water would percolate through that soil, and that he dug the hole and found that the water in it stood on a level with the stream. To all this the defendants excepted.

Subject to exception, the plaintiff testified that he relied upon the low lands, which could be cropped without fertilizing, to keep up his light upland, and that the damage to him from water held back by the new dam more than by the old dam was $1,000 for the six years prior to the date of the writ.

The defendants excepted to the following instructions given to the jury: " The evidence apparently shows that the plaintiff's title

is a prescriptive one; but this does not render it any the less valid. He has had such possession and color of title as give him a right to recover damages if the defendants have exceeded their legal rights in the premises. And so the practical question for you is whether the defendants have flowed beyond what they have a right to. The defendants say that they have title by deed, and also a prescriptive right to flow as much as they have flowed. The deed to them from Coe & Pingree conveys the right of flowage by Errol dam. This means the right to flow as it was exercised at the time the deed was given in 1877; and that is the limit of the defendants' right as founded upon the deed."

Instructions were also given as to what was necessary to enable the defendants to acquire flowage rights by prescription as against the plaintiff. The charge then proceeded as follows: "So whether this title is by deed or by prescription, it is measured by the extent of the use; and as there is no dispute but that the use was substantially the same for more than twenty years, the practical question for you will be whether there has been a substantial increase of the flowage by the new dam. The question, as you will see, is purely one of fact for you to settle. Was the flowage for the six years just before March 11, 1903, substantially greater than that which the defendants had claimed and exercised the right to the enjoyment of for twenty years?" There was no exception to these instructions.

*Edmund Sullivan* and *Goss & Tardivel*, for the plaintiff.

*Drew, Jordan, Buckley & Shurtleff* and *White & Carter* (of Maine), for the defendants.

CHASE, J. There was no error in the calling of the attention of the jury at the view, to the newly dug hole in the ground and the height of the water therein, as compared with the height of the water in the river; nor in the receipt of the civil engineer's testimony regarding the hole and the water. The height of the water in the plaintiff's land, as compared with its height in the river, was a physical fact relevant to the issue on trial, and it might be shown by direct observation and by the testimony of those who had observed it. *Concord etc. Co.* v. *Clough*, 70 N. H. 627. The fact that the civil engineer was permitted to testify to the percolating character of the soil between the hole and the river implies that the court found that he was qualified to testify upon the subject. As there is nothing in the case tending to show that there was any error of law involved in this finding, the parties are bound by it, and his testimony was competent. *Jones* v. *Tucker*, 41 N. H. 546; *Dole* v. *Johnson*, 50 N. H. 452.

Nor is the exception to the plaintiff's testimony concerning his damages tenable. *Carter* v. *Thurston*, 58 N. H. 104; *Foster* v. *Foster*, 62 N. H. 532, 534.

It would seem from the manner in which the case was presented to the jury that it was not denied that the plaintiff had acquired a title by prescription to the land flowed, subject to a flowage easement appurtenant to the defendants' land at Errol on which their dam was located. The extent of this easement appears to have been the only question in dispute. The defendants asserted title to the easement by virtue of the deed of 1877 from Coe & Pingree to their grantors, and also by prescription. The only exception to the charge related to the interpretation that was given therein to the Coe & Pingree deed. There were conveyed by this deed the land on which the dam stood and "all rights of flowage of any lands" belonging to Coe & Pingree, or either of them, upon Lake Umbagog, the Androscoggin and Magalloway rivers and their tributaries, and all right they had "to flow the land of others by any of said dams." Whether the phrase "by any of said dams" limits the right of flowing lands above the Errol dam, owned and retained by Coe & Pingree, as well as all rights acquired by them to flow lands of others, might be doubtful in the absence of further statement. But this description is immediately followed by the explanation, "intending hereby to convey all right of flowage of any lands in said county of Coös, caused by any of said dams, wherever situate, . . . and however the right may have been acquired," etc. Here, the right of flowing lands other than those conveyed is specifically limited to that "caused by any of said dams." The only flowage easement involved in the action is the one pertaining to the dam at Errol, which, according to the case, must be one of "said dams" mentioned in the deed. The right of flowage conveyed in connection with this dam or the land on which it stood was not a right to flow Coe & Pingree's other lands to any extent and depth that it was possible to flow them by a dam at Errol, but only a right to flow such lands to the extent that they were customarily flowed by the existing dam. The further explanatory clause is added: "to the end that the grantees may have and enjoy the same rights of flowage, and to the same extent over all said premises, as we now have the right to enjoy." This does not modify the prior explanatory clause. "The same rights of flowage" are of the flowage "caused by any of said dams"; these rights are to be enjoyed "to the same extent over all said premises as we [the grantors] now have the right to enjoy"; that is, by means of "any of said dams." The rightful state of the property at the time of the execution of the deed is weighty evidence of the intention which the parties attempted to

express by its terms. *Dunklee* v. *Railroad,* 24 N. H. 489 ; *Seavey* v. *Jones,* 43 N. H. 441 ; *Watson* v. *Bartlett,* 62 N. H. 447. Reading the deed in the light of this evidence, and giving its terms their ordinary meaning, it appears that there was no error in the court's instructions to the jury that the right of flowage conveyed by the Coe & Pingree deed was " the right to flow as it was exercised at the time the deed was given in 1877 "; and that " that is the limit of the defendants' right as founded upon the deed."

*Exceptions overruled.*

All concurred.