Hillsborough,
June 5, 1934.

YVONNE C. RICARD, *Adm'x,*

*v.*

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

*Albert Terrien* (by brief and orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendant.

WOODBURY, J. The defendant argues in support of its motions that the plaintiff's doctors were not qualified by either study or experience to give expert opinions on the medical question involved. It has long been the law of this state that the qualifications of a witness to give expert opinion presents a preliminary question of fact to be determined at the trial by the presiding justice, and will not, in the absence of abuse of discretion, be reviewed in this court unless that question of discretion "is specially reserved by him for revision." *Jones* v. *Tucker*, 41 N. H. 546; *Taylor* v. *Railway*, 48 N. H. 304, 311; *Dole* v. *Johnson*, 50 N. H. 452; *Hess* v. *Shurtleff*, 74 N. H. 114. For further authorities see Hening's Dig. *p.* 628.

Since 1901, when the present judicial system was established, the practice of reserving questions of discretion for decision in this court has become obsolete. Questions of discretion must now be decided by the superior court. The only question before us is whether there is any evidence upon which the decision of that court could reasonably be made. *Nawn* v. *Railroad*, 77 N. H. 299, 304.

The record discloses that the plaintiff's doctors were asked the customary questions concerning their education and experience and then were asked and proceeded to give their opinions. No objection or suggestion was made at the time that they were not qualified to testify as they did. The presiding justice was not asked to rule on their qualifications as experts, nor was any motion made to have their testimony stricken from the record.

By permitting them to testify, the presiding justice, by inference, ruled that they were qualified (*Flint* v. *Company*, 73 N. H. 483, 485), and no complaint of this implied ruling was made, except that to be inferred from the motions for nonsuit and directed verdict.

Such motions are not adequate to raise the question of an expert's qualifications. The uniform practice in this state is that questions relating to the competence of testimony must be raised at the time the testimony is given. To defer the question as to the competence of these doctors as experts until the motion for nonsuit or directed verdict is to deny the plaintiff an opportunity to further qualify his experts or to find others in the event of an adverse ruling.

The doctors, having shown medical education and experience, were *prima facie* qualified. If later during the course of their examination it appeared to opposing counsel that they were not qualified to testify on some particular phase of medicine or surgery it was counsel's duty to object to the question or move to have the testimony stricken from the record, or to adopt some other convenient procedure to bring their complaint specifically to the attention of the presiding justice. Their failure to do this warranted the assumption that they did not question the competence of the doctors to testify as they did. Under these circumstances the presiding justice would not, naturally, direct his attention to the witnesses' qualifications, but rather to what they said, when he passed upon the defendant's motions.

The ruling of competence as experts implied from permitting the doctors to testify must stand in the absence of any sufficient objection and exception thereto.

"The defendant's exception to the denial of its motion 'that the verdict be set aside as against the law and the evidence', presents no question of law not already saved by an earlier exception." *Hould* v. *Company*, 83 N. H. 474, 476; *Salvas* v. *Cantin*, 85 N. H. 489; *Simes* v. *Atwell*, 85 N. H. 537. No sufficient exception having been taken to the implied ruling that the plaintiff's doctors were qualified, the question of their competence is not raised by the motion to set the verdict aside. On this motion the only question before the presiding justice was whether the evidence was so overwhelmingly in favor of the defendant that a verdict for the plaintiff can only be explained on the ground of prejudice, partiality, corruption or mistake. The question before us is whether the action of the presiding justice in passing upon that motion can only be explained on the same grounds.

The defendant asserts that the jury in finding a verdict for the plaintiff and the presiding justice in denying its motion to have that verdict set aside were both in error because the testimony of the plaintiff's doctors is clearly incredible. In support of this position the defendant shows that the doctors had never seen a case of pul-

monary embolism, verified by autopsy, resulting from a super-ficial uninfected wound of the forearm; that they did not agree with a statement found in a text on surgery published in 1917 to the effect that "infection is an essential prerequisite of embolism from wounds"; and that, even though they became convinced that all other authori-ties agreed with that above quoted, still they would continue to assert that, in their experience, they had seen embolisms form from unin-fected wounds.

Both doctors were men of long practical experience as practicing physicians and surgeons. Both testified that they had seen cases of pulmonary embolism result from superficial uninfected wounds, and even that such diagnosis had in some but not all instances been veri-fied by autopsy. Pulmonary embolism is admittedly an event of rare occurrence. The fact that the doctors had never encountered, and verified by autopsy, one which had resulted from a precisely similar wound at most affects their credibility. In the absence of conclusive evidence of any physiological reason why an embolism cannot result from a wound in the forearm, the lack of a precisely similar experience cannot operate to render testimony worthless.

Their disagreement with the statement read to them from the text, and their willingness to follow their own experience even if that ran counter to statements to be found in all texts, likewise affects only the credibility of their testimony. Both doctors asserted that auth-orities which supported their contention had come to their notice, but neither brought such authorities into court when requested to do so. Whether this failure on their part was due to lack of time or local facilities for medical research, or because there were no such supporting authorities does not appear. Assuming, however, that there were no such authorities, still their testimony from their own experience is not thereby rendered worthless. Probably one without practical experience, who testified as an expert merely because of his study of authorities, as was the case in *Dole* v. *Johnson, supra,* could not disagree with all authorities without loss of his standing as an expert. In the case at bar the doctors were practical as well as theoretical experts. If their practical experience was at variance with the authorities, they could either follow what their experience taught them, or else conclude that their observations were wrong and follow the authorities. In the instant case the experts elected to follow their own experience. Their abandonment of authority may, of course, be shown to affect their credibility, but it does not affect their credibility to such an extent as to render their testimony value-

less.   We are not prepared to hold that, as a matter of law, the testimony of an iconoclast is always without probative force.

The defendant, in support of its position, relies upon a statement of Professor Wigmore (1 Wig., Ev. *s.* 687) quoted in *Laird* v. *Railroad*, 80 N. H. 377, 380, to the effect that: "To allow any physician to testify who claims to know solely by personal experience is to appropriate the witness-stand to impostors."   The plaintiff's doctors did not claim "to know solely by personal experience."   Both testified that there were authorities to support them.   If it should appear that such a claim of support were unfounded or too tenuous to be credible such matter should be brought directly to the attention of the presiding justice, and might form sufficient ground for his eliminating such testimony from the record.   The question whether a self-professed expert is an expert or an impostor remains one for the presiding justice, only reviewable here for manifest error and no case of such error is here made out.

*Judgment on the verdict.*

BRANCH, J., did not sit: the others concurred.