102 So.2d 399 (1958)
Walter J. KROHNE and Walter J. Krohne, Jr., d/b/a Krohne Associates, Appellants,
v.
ORLANDO FARMING CORPORATION, Appellee.
No. 176.
District Court of Appeal of Florida. Second District.
April 30, 1958.
J.R. Wells, of Maguire, Voorhis & Wells, Orlando, for appellants.
B.F. Smathers, of Andrews & Smathers, Orlando, for appellee.
*400 SHANNON, Judge.
The appellee filed its amended complaint against the appellants alleging that the plaintiff entered into a contract with the defendants for the purpose of harvesting a certain acreage of soybeans. It alleges that the crop was improperly and negligently harvested and that, by reason of the defendants' negligence, the crop yielded less than 20 bushels per acre whereas, so the amended complaint alleges, it should have obtained 40 bushels per acre if the defendants had not been negligent. The plaintiff had planted approximately 900 acres of soybeans, and with the exception of a few acres which were agreed by the parties not to be harvested, the defendant began what is called "harvest by combines" in November and completed it on December 30, 1955. The case was tried before the trial court below without a jury, at the conclusion of which the trial court rendered a final judgment against the defendant in the sum of $16,835.92 and it is to this judgment that the appeal is directed.
While the assignments of error are many and the record is voluminous, the briefs of the parties are confined to four questions. For the purpose of shortening this opinion, it will suffice to say that we will discuss the testimony of Dr. F.R. Edwards and Professor Richardson, upon which the appellant devotes two points, and the greater part of its argument.
It will be remembered that this case was tried before a judge and so "Where case is tried by circuit judge upon waiver of jury by parties, judge's findings are entitled to weight of jury verdict, before reviewing court, and will not be disturbed unless it is shown that there is total lack of substantial evidence to support his conclusion." Chakford v. Strum, Fla. 1956, 87 So.2d 419, 420. Keeping this in mind we will examine the testimony of the two above named witnesses. The appellants urged that Dr. Edwards' testimony should not have been received, but, having been received, the testimony has no validity.
Dr. Edwards' background and qualifications should be noted. He is 59 years of age, graduated from the University of Florida, College of Agriculture, in 1918; received his Master of Science degree in 1921 from Ohio State University; during 1923 and 1924 he took graduate study in Animal Husbandry and Agriculture Economics towards a Ph. D. degree in Iowa State College of Agriculture; finally, during 1943-44, he took special work in Agriculture and Economics at Yale University. From his educational background it can be readily seen that he is an expert in his field. As to his experience from a practical standpoint he has delineated the various positions he had held from the time that he left school, all of which have to do and lean towards the very thing to which he was testifying in this case. At present he holds the position of Executive Director, Florida Agricultural Service, at Plant City, Florida.
While the witness, Edwards, did not check on the various fields until January 24th, the method that Edwards used may be stated briefly as follows: When he visited the various fields he walked through each block making field notes on the apparent yield, loss, weeds, angle of cut the combine had made, etc. He then rated all the block as to the relatively heaviest yield (using plants that had not been cut at all) running to the lightest and also rated the blocks in regard to loss. Then he picked out what he judged to be typical areas in one of the heaviest, lightest and one medium yield block, measured off a certain number of square feet, and then he and his assistants actually counted the number of beans on the plants in these areas. By averaging these results and multiplying by the number of square feet in the tracts, and translating from beans into bushels, Dr. Edwards arrived at his figures. A similar technique was used in determining the number of beans wasted, so that by computation he was able to give a figure for total yield, yield per acre, total loss, and percentage of loss for each of the 25 blocks which comprised the total acreage.
*401 The appellants complained of the fact that the witness picked only a few small areas on which to base his findings, and also point to the fact that he never saw the fields until a month after the harvesting was completed, and to his frank admission that a few of the blocks which were harvested early were unusable in calculating loss, for the beans on the ground had become too decayed to distinguish. However, it should be observed that Dr. Edwards' approach was statistical and he was not attempting to determine the amount of beans on each row, but just get an accurate average. It is true that he could have made his study reach almost any result he wanted to by selecting predetermined areas to obtain his samples from, but this objection goes to the credibility and competence of him as a witness, and the same criticism is true to a greater or lesser extent of all expert witnesses. On the statistical viewpoint we can think of no other method that would give the same results.
We have been detailing the method used by Dr. Edwards as an expert, but we are not forgetting that in addition to him, the plaintiffs had witnesses in all phases of their case and used Dr. Edwards' testimony primarily for the purpose of reaching a statistical correctness.
As an example of his testimony he was asked:
"Q. Professor, do you feel this was a scientific, as good and scientific approach as possible, to determine what the yield was in these fields? A. Yes, I do; I don't know of any better method of obtaining it; if I had, I would have used it.
* * * * * *
"Q. Did you arrive at total conclusions, figures of the whole acreage?
A. Yes.
"Q. Well, then, you had Mr. Tarlow's figures for the whole acreage, after harvest? A. While we did not use Mr. Tarlow's figures directly, we could not use them in determining the figures, our final estimate was surprisingly, in fact, rather embarrassingly close to his, just due to the fact they happened to be that way. I say embarrassingly because when two figures agree so closely in statistics, you wonder if they had been worked out to try to make them close together, but they did come out close together."
The trial court has, in the first instance, a responsibility of allowing or disallowing the testimony of an expert and he also has the responsibility present to determine not only the qualifications, but also as to the range of subjects regarding which he can testify. The exact principle is quoted in Turner v. American Security & Trust Company, 213 U.S. 257, 29 S.Ct. 420, 421, 53 L.Ed. 788:
"The responsibility for the exercise of the judicial power of determining whether a given witness has the qualifications which will permit him, to the profit of the jury, to state his opinion upon an issue of this kind, may best be left with the judge presiding at the trial, who has a comprehensive view of the issue and of all of the evidence, and the witness himself before his face."
The trial court allowed the witness to testify and the appellant has not made error apparent. Ricard v. Prudential Insurance Company of America, 87 N.H. 31, 173 A. 375, 376, 93 A.L.R. 784:
"* * * the qualifications of a witness to give expert opinion presents a preliminary question of fact to be determined at the trial by the presiding justice, and will not, in the absence of abuse of discretion, be reviewed in this court * * *"
In regard to Dr. Edwards' testimony the appellant, in answering appellee's brief, discusses Twyman v. Roell, 123 Fla. 2, 166 So. 215, 218, in which they say that the case did not in fact deal with the admissibility *402 of testimony at all and quote a sentence therefrom:
"* * * If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person. * * *"
In the appellee's brief, it is stated concerning Twyman v. Roell, supra:
"The Court found for the Appellant and he was awarded substantial damages on the estimated profit of the English peas that were never planted. The Court said as follows:
"`The rule is well settled that if there is a yardstick or measure of damages by which prospective profits may be determined and they arise out of a contract in which profit is the inducement to its making, they may be allowed if proven, whether they arise from farming, mechanical, or other contracts.
"`This rule was approved in Hodges v. Fries [34 Fla. 63, 15 So. 682], supra, where the court said that if prospective profits form an elemental constituent of the contract, their loss, the natural result of its breach, and the amount can be established with reasonable certainty, such certainty as satisfied the mind of a prudent and impartial person, they are allowed. The requisite to their allowance is some standard, such as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained.
"`The following cases involving prospective profits for the loss of crops support the rule as here stated: (citing cases) * * *.
"`Uncertainty of the amount or difficulty of proving the amount of damage with certainty will not be permitted to prevent recovery on such contracts. If it is clear that substantial damages have been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether. (citing cases) * * *.
"`The uncertainty which defeats recovery in such cases has reference to the cause of the damage rather than to the amount of it. If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person. (Citing cases.) * * *'"
We have quoted from the case of Twyman v. Roell quite extensively primarily for the purpose to explain that the difficulty in proving the present case is quite similar to the proof needed in the Twyman case and in such cases, our court holds that "If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person." In the Twyman case the plaintiff brought suit for a crop of English peas which were never planted. In the instant case from a few remaining stalks and a few remaining soybeans, Dr. Edwards had given statistical testimony regarding the crop that had been planted. Assuming, as the trial court rightfully decided, that he was an expert, how then could he have proceeded with this evidence. To hold that he was not qualified to testify, as he did testify, would put a premium on the testimony of lay witnesses and bar the testimony of an expert who qualifies certainly more than lay witnesses, in the words of our court "proximate estimates of witnesses".
The appellant also objected to various questions that were asked of Professor Richardson. What we have said about Dr. Edwards' testimony is applicable here except that, as to hypothetical questions, the various questions asked Professor Richardson *403 and the answers that he gave are a little closer to the line than are those pertaining to Dr. Edwards, but, nevertheless, we hold that the appellant has not made reversible error appear in his assignments regarding the testimony of Professor Richardson.
We have stated that there were four assignments of error, the remaining assignments do not call for an opinion.
Affirmed.
KANNER, C.J., and ALLEN, J., concur.