127 So.2d 453 (1961)
Edith MILLS, Appellant,
v.
REDWING CARRIERS, INC., Appellee.
No. 1988.
District Court of Appeal of Florida. Second District.
March 3, 1961.
*454 E.B. Rood, Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellant.
Vernon W. Evans, Jr. and Thomas C. MacDonald, Jr., Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for appellee.
ALLEN, Chief Judge.
The appellant, as plaintiff in the lower court, filed an action for damages for the wrongful death of her husband caused by the alleged negligence of defendant's driver in colliding head-on with a pickup truck being driven by plaintiff's decedent. The jury returned a verdict in favor of plaintiff and defendant filed a motion for new trial, which the court granted, on the ground that the court improperly permitted a state police officer to testify as to the alleged point of impact.
On February 17, 1959, after dark, the plaintiff's decedent was proceeding east in his pickup truck on State Road 60 about three miles east of Mulberry. The defendant's driver was proceeding west in a tractor-trailer petroleum carrier. The road was rough, it was raining and overcast. The vehicles collided and the left front fender of the pickup swerved to the right and stopped partially off of the south side of the pavement. The tractor-trailer veered to the right and stopped on the north side of the pavement with the cab portion jack-knifed thus pointing southeasterly across the pavement.
Two witnesses, Russell and William Edwards, brothers, were riding in an east bound automobile approximately 50 yards behind the plaintiff's decedent. Russell testified that he could see only the lights of the oncoming tractor-trailer; that he saw nothing unusual about the approaching vehicles; that the collision occurred and the vehicles parted; and that he could not say the defendant's vehicle was on the wrong side of the highway.
William Edwards testified that the pickup was in the proper lane; but on cross-examination he stated that he did not know exactly where the defendant's truck was at the time of the collision and that he did not see the tractor-trailer on the wrong side of the highway.
Dan Futch was called as a witness for plaintiff and testified concerning certain photographs that were offered in evidence without objection. Futch testified that he was a highway patrolman on the day of the accident; that he was called to the scene of the collision; that neither vehicle had been moved when he arrived; that there were some skid marks left by the jack-knifed tractor-trailer; that he did not note any skid marks left by the pickup truck; but that he did not know how to ascertain what tire left each skid mark.
After answering questions in regard to the photographs and the scene of the accident, Futch was questioned on direct by plaintiff's counsel and the following testimony was adduced:
"Q. Now, did you find any visible evidence in the highway, Officer, indicating the point of impact? A. Yes sir.
"Q. What was that physical evidence? A. There was a bunch of dirt and oil, or some water  some type of fluid. It looked like oil and water and dirt.

*455 "Q. From that did you determine the point of impact? A. To the best of my ability, following the skid marks where they were turned in a southerly direction, and the skid marks  this oil and dirt and water was there.
"Mr. Evans: Just a minute. I don't know if he is going to answer this question. I don't think he has qualified himself to testify as to point of impact as an expert witness.
"Mr. Rood: They are allowed, from the debris and their investigation to state the point of impact, if there is physical evidence of it. Let me ask this question 
"Q. Could you determine, Officer, from the physical evidence, could you determine the point  point out the point of impact? A. Yes sir.
"Q. Would you tell us from the physical evidence where it was?
"Mr. Evans: To which the Defendant objects. Counsel has not shown the witness to be qualified to express and (sic) opinion about a matter about which he has no personal knowledge of. If he is an expert in these things, he can so qualify him.
"The Court: Objection overruled.
"A. Approximately two feet south of the center line in the eastbound lane."
On cross-examination the witness Futch stated that he had attended an accident investigation school but that he was not a qualified expert on computing speed of vehicles from skid marks; that he was not an expert on ascertaining point of impact; and that his opinion as to point of impact in the instant case was based solely on the debris, oil and dirt on the highway, but that only a portion of the debris was shown in the photographs which previously had been introduced into evidence. Upon these admissions by the witness of his lack of professional qualifications the defendant's counsel made the following motion:
"Mr. Evans: Your Honor, I move to strike his testimony on the grounds he is not qualified to testify, sir. He has testified at this time to his lack of knowledge of where these marks, or how these marks are made. He has testified that was how this happened. I move to strike his testimony as to the point of where the accident occurred. He is not qualified, as he has just demonstrated 
"Mr. Rood: The weight of it all is for the Jury.
"The Court: I am going to overrule the objection."
Clarence Bruce, an accident reconstruction expert, testified in plaintiff's behalf concerning the location of the vehicles but on cross-examination stated that he could not personally "tell where on the highway they hit."
Bob Kilgore, a highway patrolman, testified that he had been trained in determination of impact; and then he was asked whether that, based upon the debris in the road and other factors, did he agree with Trooper Futch as to the point of impact. Before he could answer the defendant objected, was sustained, and the question was withdrawn.
Raymond Jones, the driver of defendant's truck, denied that his rig jack-knifed prior to the collision; and stated that he was in the proper lane when he was struck head-on by plaintiff's decedent's truck.
The lower court, in its order granting a new trial, held:
"This cause came on to be heard upon defendant's motion for new trial and one of the errors assigned is `that the Court erred in allowing expert opinion testimony of plaintiff's witness, Dan Futch, Florida highway patrolman, as to the point of impact, meaning the place on the highway where collision occurred between the vehicles involved, over objection of defendant.'

*456 "This was a case in which there were no eye witnesses as to the point of impact and the photographs introduced in evidence showed skid marks of defendant's automobile approaching the center line but not crossing the center line, and therefore the question of the point of impact became a pivotal question in the case. Based on the testimony of the highway patrolman a hypothetical question was then propounded to another expert and an answer elicited.
"It is the opinion of the Court that it would be error, but in most cases harmless error, to allow the highway patrolman to testify as to the point of impact in that this invades the province of the jury. See Padgett v. Buxton-Smith Mercantile Co. [10 Cir.], 262 F.2d 39. However, it is the opinion of this Court that due to the facts of this case the error was harmful and therefore,
"It Is Ordered that the motion for new trial be, and the same is hereby granted to the defendant."
It is from this order that the plaintiff has taken her appeal and urges before this court that the basis upon which the court granted the new trial had not been properly and timely preserved during the trial. We believe that the foregoing facts, testimony and objections considered in light of the broad discretion of a trial court in granting a new trial sustains the ruling of the trial judge.
The appellant next contends that the trial judge based his granting of a new trial on the ground that the improper testimony invaded the province of the jury whereas the objection during the trial was that the witness Futch had not been qualified as an expert. More specifically, appellant asserts that the trial court improperly granted a new trial on a ground not clearly raised by counsel for defendant when the objectionable testimony was sought to be introduced into the record.
When facts are within the ordinary experience of the jury, the conclusion from those facts will be left to them, and even experts will not be permitted to give conclusions in such cases. Mann v. State, 23 Fla. 610, 3 So. 207; 13 Fla.Jur. Evidence, § 312. Expert testimony is admissible only when the facts to be determined are obscure, and can be made clear only by and through the opinions of persons skilled in relation to the subject matter of the inquiry. Consequently the opinion of an expert should be excluded where the facts testified to are of a kind that do not require any special knowledge or experience in order to form a conclusion, or are of such character that they may be presumed to be within the common experience of all men moving in ordinary walks of life. See Millar v. Tropical Gables Corp., Fla.App. 1958, 99 So.2d 589. The reasons for this rule are that where the facts are such that the jury is competent, from common knowledge and experience, to form conclusions thereon, it is their province to do so, and to permit expert testimony in such an instance presents the potential danger that the jury may forego independent analysis of the facts and bow too readily to the opinion of an expert or an otherwise influential witness.
An observer is qualified to testify usually because he has firsthand knowledge which the jury does not have of the situation or transaction at issue. The expert, however, has something different to contribute. This is a power to draw inferences from the facts which a jury would not be competent to draw. To warrant the use of testimony from a qualified expert, then, two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of facts in its search for truth. McCormick, Handbook *457 of the Law of Evidence, 1954, page 28 and authorities collected therein. Moreover, where the opinion is nothing more than the speculation of an admitted nonexpert on the issue involved, to that extent it does invade the province of the jury, which is equally competent to reach such a conclusion upon the same physical facts observed by the witness and made known to the jury by exhibits and testimony. There would appear therefore to be no material conflict between the basis for the objection by defendant to the evidence in the instant case and the ground asserted by the court in granting the new trial.
Under Rule 2.8(c), Florida Rules of Civil Procedure, 31 F.S.A., a trial court may grant a new trial on its own initiative for any reason for which it might have granted a new trial on a motion of a party. The Supreme Court of Missouri stated in regard to a similar issue in Johnson v. Kansas City Public Service Co., 1950, 360 Mo. 429, 228 S.W.2d 796, 797:
"Before examining these contentions, we must consider a preliminary matter. The only objection made to this testimony was that it was `wholly immaterial.' Appellant argues that such an objection is so vague and general that it amounts to no objection at all. The cases cited by appellant on this point consider the sufficiency of a record for appellate review where the trial court has denied the motion for a new trial. They have no application here. If matters of error are raised in a motion for a new trial, the trial court has the authority to correct its errors, within the scope of the motion, even though no objection had previously been made to the matters of which complaint is made. Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482; Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711; Schierloh v. Brashear Freight Lines, Mo.Sup., 148 S.W.2d 747. If the testimony of the motormen was erroneously admitted, we hold that the trial court had authority to correct its error by sustaining the motion for a new trial."
Patrolman Futch's testimony as to the point of impact was admittedly not based on any scientific interpretation of skid marks or technical data, but, on the contrary, was based upon the location of certain dirt and debris, part of which was not even shown by the photographs of the scene of the accident. This lay testimony concerning the pivotal point of the case by a highway patrolman could have unduly influenced the jury in its interpretation of the facts. As was said in Padgett v. Buxton-Smith Mercantile Co., 10 Cir., 1958, 262 F.2d 39, 42:
"The expressed opinion of the highway patrolman did not serve to enlighten the jury in respect to a matter outside its competence and should not have been admitted. While we are loath to interfere with the broad discretion of the trial courts in matters of this kind, the opinion came from an officer of the law whose badge of authority gave it evidential significance which may not be dismissed as harmless or nonprejudicial. As an official opinion of a fact matter within the knowledge or comprehension of the members of a jury it carries weight which tends to usurp the judicial function. It is indicative, we think, of what appears to be a constantly growing tendency in cases of this kind for an investigating officer to assume the prerogative of assessing liability. This is the responsibility of the trier of the facts.
"The judgment is reversed with directions to grant a new trial."
In Ippolito v. Brener, Fla. 1956, 89 So.2d 650, the testimony was in conflict as to how a head-on collision occurred. The court stated in reviewing the record that the trial court was correct in refusing an offer of opinion evidence from a highway patrolman as to whether or not the *458 plaintiff's car had been on the wrong side of the road prior to the impact.
Similarly, in Cheek v. Barnwell Warehouse & Brokerage Co. et al., 209 N.C. 569, 183 S.E. 729, there were no eyewitnesses to the collision. The plaintiff offered the testimony of a witness, who had arrived at the scene soon after the accident occurred, on the issue of the point of impact. The trial court excluded the testimony and on appeal the Supreme Court of North Carolina stated:
"We think that the court properly excluded this testimony from the jury, since it does not fall within the exception to the rule as to the admission of opinion evidence by a nonexpert witness upon a collective fact, for the reason that it is an expression by the witness of an opinion upon the very question which the jury was called upon to answer. (Citations omitted.)
"The court allowed the witness to describe the position of the cars, the location of the glass and other physical facts which he found upon his arrival at the scene of the collision, and it was the province of the court to determine from those facts, and such other facts as the evidence disclosed, whether there was evidence sufficient to be submitted to the jury upon the determinative question in the case, namely, on which side of the center line of the road did the collision take place. * * *"
It is the responsibility of the trial court in the first instance of determining the admissibility of the testimony of an expert and to also determine the scope of subjects regarding which he can testify. Krohne Associates v. Orlando Farming Corp., Fla.App. 1958, 102 So.2d 399. After making such ruling and the verdict is rendered, if the trial court, based on his talents, knowledge and experience, concludes that the jury has been deceived as to the force and credibility of the evidence, it is his duty to grant a new trial. Inasmuch as such motions are granted in the exercise of a sound, broad discretion the ruling should not be disturbed in the absence of a clear showing that it has been abused. Dent v. Margaret Ann Super Markets, Fla. 1951, 52 So.2d 130; Geffrey v. Langston Construction Co., Fla. 1952, 58 So.2d 698; Cloud v. Fallis, Fla. 1959, 110 So.2d 669. A legal presumption exists that the trial judge acted properly in granting a new trial and it has been held that a stronger showing is required to reverse an order granting a new trial than one denying it. Mead v. Bentley et al., Fla. 1952, 61 So.2d 428.
The qualifications and competency of an expert witness were discussed at length by this court in Myers v. Korbly, Fla.App. 1958, 103 So.2d 215. Numerous authorities are cited in that opinion in support of the propositions that the trial court, in hearing the testimony and observing the witnesses, has superior advantages in ruling on the admissibility of expert testimony; that the trial court's ruling is therefore entitled to great weight and will not be pronounced erroneous unless clearly so made to appear; and that other evidence on the same issue must also be examined before determining whether the court's ruling is erroneous. In the Myers case this court concluded that there was ample evidence from which the jury could have determined the relative speed of the defendant's car without considering the questionable testimony of the expert witness and accordingly ruled that admitting the expert's testimony, even if improper, was not reversible error. In the instant case the only evidence directly on the question of the precise location of the point of impact was the testimony of trooper Futch. Thus, if his testimony is considered incompetent under the facts of this case, the jury could therefore have been misled in resolving the issue of negligence. In granting the new trial, the trial court in this case concluded that it had been in error in admitting Futch's testimony and we believe that the appellant has failed to make the requisite *459 showing of abuse of discretion by the trial court in so ruling.
We, therefore, conclude that, based upon the facts of this case, the order of the lower court should be and is affirmed.
Affirmed.
KANNER, J., and GERALD, LYNN, Associate Judge, concur.