**STATE of Maine**

**v.**

**John F. BARNETT.**

Supreme Judicial Court of Maine.

Argued May 4, 1984.

Decided Sept. 5, 1984.

Margaret J. Kravchuk, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for the State.

George F. Wood (orally), Sanford, McClaskey & Greig by Richard Petersen, Vancouver, Wash., for defendant.

Before NICHOLS, WATHEN, GLASS-MAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

After a jury trial in Superior Court, Penobscot County, the defendant John Barnett was convicted of arson, a Class A crime, 17–A M.R.S.A. § 802.[1] He now appeals to the Law Court, contending that the justice presiding at his trial committed reversible error in permitting one of the State's witnesses to give opinion testimony. Finding no error in the trial court's ruling, we affirm the judgment of conviction.

The defendant was indicted for arson by a Penobscot County grand jury on August 3, 1981, and brought to trial on July 20, 1982. The evidence showed that a fire occurred at the defendant's house in Millinocket on January 8, 1981. Through the testimony of various lay and expert witnesses the State produced evidence indicating that the fire was not the product of any natural, or accidental causes such as lightning, malfunction of the furnace, an electrical defect, the storage of flammable liquids. *See State v. Spearin,* 477 A.2d 1147 (Me.1984) (proof of arson by eliminating all natural and accidental causes in the area of origin). Ronald Evans, the Assistant State Fire Marshall, was duly qualified as an expert in arson investigation and testified that the fire originated on top of a piece of ductwork connected to the furnace and located just below the ceiling of the basement. From the burn patterns and from stain and residue found on the ductwork, Evans concluded the fire was caused by ignition of a flammable liquid placed on top of the ductwork. A few days prior to the fire the defendant had moved out of the house with his family, taking many possessions with him, allegedly because his fur-

---

1. 17–A M.R.S.A. § 802 under which the defendant was indicted provided in pertinent part, as follows:

 1. A person is guilty of arson if he starts, causes, or maintains a fire or explosion;
 A. ...; or

 B. On his own property or the property of another
 (1) with the intent to enable any person to collect insurance proceeds for the loss caused by the fire or explosion; or
 (2) ....

nace had malfunctioned. The defendant was seen coming out of the house just prior to the fire.

Barnett's claim of error focuses on the testimony of Chief Daniel Hart of the Millinocket Fire Department. Chief Hart testified as to his observations upon entering the defendant's house after the fire had been extinguished by Millinocket fire-fighters. After Chief Hart had recounted his observations, the prosecutor informed the trial justice that the State sought to elicit testimony from the Chief that he had called in the State Fire Marshall's office to investigate the origin of the fire because he thought the fire was "suspicious". The justice ruled that Hart could not testify that he believed the fire to be of suspicious origin, unless he was qualified as an expert. A voir-dire examination was held. During the voir dire Chief Hart, who had served eighteen years as a fire-fighter, was able to recite a long and impressive list of credentials. Hart testified that he had been involved in fire investigations while serving in the Air Force, while working in the fire departments of several large corporations, and while working for his own consulting firm, prior to joining the Millinocket Fire Department. He had received formal training from the Air Force, from the Boston Fire Department, from the Boston Fire Academy, and from the Maine State Fire Marshall's Office. Although he testified that he felt qualified to determine most of the obvious causes of fires and to know when further investigation was necessary, he conceded that he did not feel qualified to pinpoint the cause of all fires. Based on the Chief's voir-dire testimony, the presiding justice made the following ruling:

> By the nature of what Mr. Hart says himself, I can't let him testify as an expert.... I do think I ought to say that he may be unduly modest in his ability here. I've heard many a state's fire marshal who's had a fraction of the training this gentleman has had, not as sophisticated training as he's had over the years, who felt qualified to answer

these questions without any hesitation. But here we have a person of an enormous amount of background and he himself says, no, he wasn't qualified to make these conclusions and so I have to go by what he says.

After the jury was recalled, Hart was questioned as to his observations of the furnace, and testified as follows:

> I looked for distortion on the walls of the plenum chamber and on the walls of the furnace itself and bulging and distortion on the walls of the ductwork and—
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Objection overruled, *he can tell us what he looked for and what he saw.*
>
> Go ahead.
>
> THE WITNESS [Hart]: (Continuing)— and found no distortion. And then I looked at the front of the furnace in the area of the burner itself to see if any— there had been any evidence of an internal explosion which would be evidenced by large amounts of soot or blackening on the front of the furnace and found none. (Emphasis additional)

■ The defendant contends that this testimony contained an expert opinion and therefore violated the court's earlier ruling that Hart was not competent to testify as an expert. We agree that Chief Hart's statements that an internal explosion "would be evidenced by large amounts of soot or blackening on the front of the furnace" and that no such soot or blackening was evident went beyond the competence of a lay witness. We do not agree, however, that there was error in the court's ruling. The presiding justice's original determination that Chief Hart could not testify as an expert was made in response to the State's offer that he would testify that the fire was "suspicious" in origin. When the defendant objected to Hart's testimony regarding the furnace, the presiding justice more specifically ruled that Hart could testify to "what he *looked for* and what he saw." (emphasis added). Chief Hart's

statement did not go beyond the scope of this qualified ruling. He simply stated that he looked for "soot or blackening on the front of the furnace" as evidence of an internal explosion and found none.

 Nor do we find any error in the Superior Court's qualification of its earlier broader ruling so as to permit Chief Hart to testify in the limited way that he did. Chief Hart's concession that he felt unqualified to identify the cause and origin of all fires did not address his ability to identify evidence of an explosion within a furnace. The supposed concession was not dispositive in any event. It is for the trial judge, not the witness, to determine the issue of expertise. The fact that the witness disclaims his ability to testify as an expert does not prevent the trial court from permitting him to do so.

As stated in *Glover v. State*, 129 Ga. 717, 724, 59 S.E. 816, 819 (1907):

> A witness might have such a very modest estimate of his own abilities and qualifications to give an expert opinion upon a given subject as to disclaim being an expert in reference thereto; and yet his testimony as to his education, study, experience, investigations, and the extent and scope of his practice or work in his profession or avocation might be such as to show him well qualified to give such an opinion. On the other hand, a vain or conceited person, called as an expert witness, might, in the most positive terms, declare himself to be one in reference to the subject under investigation, and yet his other testimony might disclose such woeful ignorance and want of intelligent observation and experience in the premises as to render his opinion of no value whatever. It would be a dangerous rule to allow the question whether a particular witness is or is not an expert as to the

question under consideration to depend solely on the witness' opinion of his own qualifications in reference to the matter. *See also Braswell v. Owen of Georgia, Inc.*, 128 Ga.App. 528, 197 S.E.2d 463, 467 (1973); *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 657 (Iowa 1969); *O'Kon v. Roland*, 247 F.Supp. 743, 749 (S.D.N.Y.1965).

 The trial court's ruling allowing Chief Hart to testify as he did necessarily included a determination that the Chief was qualified: *See Conley v. Portland Gas Light Co.*, 99 Me. 57, 58–59, 58 A. 61 (1904); *see also O'Haire v. Breton*, 102 N.H. 448, 450–51, 159 A.2d 805, 807 (1960); *Flint v. Union Water Power Co.*, 73 N.H. 483, 485, 62 A. 788, 789 (1906); *State v. Perry*, 275 N.C. 565, 169 S.E.2d 839, 844 (1969). We will overturn the trial court's determination of the competence of an expert witness only where that determination constitutes an abuse of discretion. *See State v. Anderson*, 434 A.2d 6, 9 (Me.1981); *Minott v. F.W. Cunningham & Sons*, 413 A.2d 1325, 1329–30 (Me.1980). Given Chief Hart's substantial background in arson investigation and given his familiarity with the working of furnaces, as demonstrated by his earlier testimony,[2] we conclude that the trial court did not abuse its discretion in allowing him to testify as he did.

The entry will be:

Judgment affirmed.

All concurring.

---

**2.** Earlier in his testimony, Chief Hart had explained how heat is collected from a furnace by means of a heat exchanger and then forced through the ductwork by means of a blower.